MAXEY v. FRANKLIN LIFE INS. CO. et al.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 10, 1914. Rehearing Denied Feb. 7, 1914.)

1. INSURANCE (§ 665*)—ACTION ON POLICY—SUBSTITUTION OF BENEFICIARY—UNDUE INFLUENCE—SUFFICIENCY OF EVIDENCE.

In a controversy between the wife of an insured and an illegitimate daughter as to the proceeds of an insurance policy, evidence *held* to sustain a finding that the wife induced the insured by undue influence to substitute her, instead of the daughter, as beneficiary of the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

2. INSURANCE (§ 663*)—ACTION ON POLICY—ADMISSIBILITY OF EVIDENCE.

Where, in a controversy between an illegitimate daughter and the wife of an insured as to the proceeds of a policy, the daughter charged that the wife induced the insured by undue influence to substitute her, instead of the daughter, as beneficiary, and also that the insured was of unsound mind, evidence that the insured was very fond of the daughter, and expressed an intention at the time of changing the policy to provide for her in some other method, was relevant to such issues.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 663.*]

3. INSURANCE (§ 116*)—INSURABLE INTEREST.

An illegitimate daughter has an insurable interest in the life of her father; the ties of blood being sufficient to overcome any reasonable supposable motive upon her part to bring about the death of her father.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 158–162; Dec. Dig. § 116.*]

4. TRIAL (§ 349*)—SPECIAL ISSUES—SUBMISSION.

It is within the discretion of the trial judge whether to submit the case on special issues, or to submit it in a general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 823–827; Dec. Dig. § 349.*]

5. APPEAL AND ERROR (§ 1057*)—REVIEW—HARMLESS ERROR.

Where, in a controversy between a wife and an illegitimate daughter as to the proceeds of a life policy, the issue was whether the wife by undue influence induced the insured to substitute her for the daughter as beneficiary, any error in refusing to admit evidence of immoral environments in the home of the daughter at the time of the change was not prejudicial, as it was shown by other evidence that the insured was aware of the conditions, and hence was no cause for reversal under rule 62a (149 S. W. x).

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194–4199, 4205; Dec. Dig. § 1057.*]

Appeal from District Court, Palo Pinto County; W. J. Oxford, Judge.

Action on insurance policy by Mrs. Annie W. Maxey against the Franklin Life Insurance Company, in which Villita Maxey intervened, claiming the proceeds of the policy. From a judgment for intervener, plaintiff appeals. Affirmed.

Stennis & Wilson, of Weatherford, and Gross & Gross, of Mineral Wells, for appellant. John W. Moyers, of Mineral Wells, J. T. Ranspot, of Palo Pinto, and Hood & Shadle, of Weatherford, for appellees.

DUNKLIN, J. On June 22, 1904, the Franklin Life Insurance Company issued to J. H. Maxey a policy of insurance in the sum of $2,000, payable upon his death to his illegitimate daughter, Villita Maxey. On August 4, 1910, upon the written request of the insured, his wife, Mrs. Annie W. Maxey, was substituted as beneficiary of the policy in the place and stead of Villita Maxey. On November 20, 1911, J. H. Maxey died, leaving the policy of insurance in full force and effect.

Mrs. Annie W. Maxey instituted this suit against the insurance company to collect the amount due on the policy. The company filed an answer, admitting liability for the amount named in the policy, and tendered the same into court for the benefit of whomsoever might be shown legally entitled thereto. The company further alleged that Villita Maxey was claiming to be the rightful beneficiary of the policy, and prayed that she be made a party to the suit, to the end that her claim and that of plaintiff might be adjudicated.

In response to this prayer, Villita Maxey filed her petition in intervention, in which she challenged the validity of the transfer of the policy by the insured to plaintiff upon two grounds: First, that at the time of such transfer the insured was mentally incapacitated to make it; and, second, that the transfer was procured by plaintiff through undue influence exercised by her upon the insured. These two issues were the only controverted issues of fact upon the trial, which resulted in a verdict and judgment in favor of Villita Maxey.

Interpreted in the light of the court's charge, the verdict of the jury shows a finding in Villita Maxey's favor upon one or both the issues tendered by her, viz.: Lack of mental capacity of insured to make the transfer, or the execution of the same as the result of undue influence exercised upon him by plaintiff. Appellant insists that the evidence was insufficient to warrant the submission of either of those issues to the jury, and that, as those were the only controverted issues upon which Villita Maxey relied to recover the money in controversy, the judgment should be reversed.

[1, 2] While the testimony of a number of witnesses tended strongly to show that the insured was of sound mind when the change in the policy was effected, yet the testimony of others was sufficient to support a contrary finding. The fact that the attorney who prepared the papers necessary for the change of the policy testified that in his opinion J. H. Maxey was then of sound mind, and no other witness testified that his mind was unsound on that specific date, would not require a different conclusion from that noted above, since other witnesses testified, in effect, that J. H. Maxey was of unsound mind a short time before and after the change, that he was strongly addicted to habits of intoxication,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

and that his malady was of the progressive type. 40 Cyc. 1028. The evidence further showed, without controversy, that insured was very fond of Villita Maxey, whom he claimed as his child, expressing an intention at the time the policy was changed to provide for his child by some other method, notwithstanding which, after substituting his wife as the beneficiary in the policy in place of his child, who was then only about 12 years old, later executed a will devising all his property to plaintiff, and which will seems never to have been revoked. This evidence was pertinent, not only to the issue of mental incapacity of the insured, but also to that of the alleged undue influence exercised by plaintiff upon her husband.

And those circumstances in connection with testimony of one witness to an admission by plaintiff that she had influenced insured to change the policy in her favor by administering to him a drug, together with other facts and circumstances, a recital of which we deem unnecessary, were sufficient to support a finding that the change in the policy was the result of undue influence exercised by plaintiff upon J. H. Maxey.

[3] The trial court, in effect, instructed the jury peremptorily that, although Villita Maxey was an illegitimate child of J. H. Maxey, she had an insurable interest in his life, and refused an instruction requested by appellant presenting the contention, which is also urged in this court, that if, at the time of the death of J. H. Maxey, Villita Maxey had no reasonable expectation of receiving benefits from the continued life of her father, then she had no insurable interest in his life. If Villita Maxey had no insurable interest in the life of her father, then, even though no change had been made in the policy, she would not be entitled to the proceeds; but the same would pass to the legal representatives of J. H. Maxey. Cheeves v. Anders, 87 Tex. 292, 28 S. W. 274, 47 Am. St. Rep. 107.

In the case of Price v. Knights of Honor, 68 Tex. 361, 4 S. W. 633, our Supreme Court said: "It is almost universally conceded that policies procured by persons having no interest in the life of the insured are void at common law as against public policy. The policy holder has nothing to lose for which he can claim indemnity; on the contrary, his interest is in the early death of the insured; when that occurs, he ceases to pay premiums, and receives the amount of the policy. This creates a temptation to destroy human life, and the common law forbids the contract. These are the grounds upon which such policies are held to be void." The reason for the rule thus announced has been approved in Cheeves v. Anders, supra; Goldbaum v. Blum, 79 Tex. 638, 15 S. W. 564; and Wilton v. N. Y. Life Ins. Co., 34 Tex. Civ. App. 156, 78 S. W. 403.

Under the decisions of this state, which we believe to be in accord with the weight of the authorities, a legitimate child has an insurable interest in the life of his father. Wilton v. N. Y. Life Ins. Co., 34 Tex. Civ. App. 156, 78 S. W. 403; 25 Cyc. 704. And in Equitable Life Ins. Co. v. Hazelwood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893, a judgment in favor of a beneficiary named in a policy upon the life of his brother was sustained. And it seems that such ties of relationship as that of brothers and of parent and child are sufficient to show such insurable interest without further proof of reasonable expectation on the part of the beneficiary of future benefits from the continued life of the insured. Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924. In the case of Stahl v. Grand Lodge, A. O. U. W., 44 Tex. Civ. App. 203, 98 S. W. 643, it was held, in effect, that an illegitimate daughter by virtue of kinship alone had an insurable interest in the life of her father, who had taken out an insurance policy in her favor, that he owed the moral duty to support his daughter, and that his act in taking out the policy was not contrary to public policy, but was one to be encouraged and commended. The reasoning advanced in that decision we believe to be sound, and we approve it. The evidence in this case shows, without controversy, that J. H. Maxey entertained feelings of very tender regard for Villita Maxey from her infancy up to the date of the change of the policy, that he had frequently extended financial assistance to the mother of the child which inured to the child's benefit also; and the evidence tends to show that, if he had remained in a normal condition of mind, and had been unmolested by any interference from outside sources, those benefactions probably would have continued. But the natural ties of blood between J. H. Maxey and Villita Maxey, independent of the foregoing circumstances, were sufficient to overcome any reasonably supposable motive on the part of the daughter to bring about the death of her father, which, under the decisions of our courts above noted, is the true test of insurable interest.

[4] There was no error in submitting the case to the jury on a general charge, and refusing to submit it on special issues as requested by the appellant. Ross v. Moskowitz, 95 S. W. 86; Weis v. Dittman, 4 Tex. Civ. App. 35, 23 S. W. 229; Cole v. Crawford, 69 Tex. 124, 5 S. W. 646.

The requested instruction No. 3, the refusal of which is made the basis of the third assignment, was argumentative in form, and therefore objectionable as being upon the weight of the evidence; furthermore, the issue covered by that instruction was correctly submitted by the court in his general charge. Nor do we think that the charge given upon the two issues of fact submitted properly, subject to the criticism made, that it imposed upon appellant the burden of establishing

the negative of those issues, as in one paragraph of the charge the jury were expressly told that the burden was upon Villita Maxey to establish the affirmative of those issues by a preponderance of the evidence, and that a verdict should be returned against her in the event she had failed to discharge that burden.

[5] By another assignment complaint is made of the refusal of the court to admit testimony offered by appellant tending to show certain immoral environments in the home occupied by Villita Maxey at the time of the change in the policy. This evidence was offered for the purpose of showing that such conditions might have influenced J. H. Maxey to make such change in the policy. It was shown by other evidence that J. H. Maxey was aware of those conditions at that time, and, furthermore, that his child was then only 12 years of age. At all events, it is not probable that this evidence, if admitted, would have caused the rendition of a verdict different from that which was rendered, and hence the error, if any, in excluding it is no cause for a reversal of the judgment, under rule 62a (149 S. W. x).

The judgment is affirmed.